IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN ALLEN MAZURAK,

            Plaintiff,               No. CIV S-03-2114 GEB GGH P

     vs.

CA. DEPT. OF JUSTICE, et al.,      <u>ORDER</u> &

            Defendants.         <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

<u>Introduction</u>

          Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983.  On May 30, 2006, this court issued an order directing defendants, in response to plaintiff's May 22, 2006, request for voluntary dismissal, to notify this court, within ten days, whether they had any objection to the dismissal of this action, and, if not, stating that the matter would be dismissed pursuant to Fed. R. Civ. P. 41(a)(2).

          Defendants responded timely, objecting vociferously to any dismissal of this action without prejudice, acquiescing only to a dismissal with prejudice, to which plaintiff replied, disputing the grounds for defendants' objections to dismissal without prejudice and asserting that he withdraws his motion to dismiss if the court would consider the dismissal with prejudice that defendants seek.  The court will now deem plaintiff's motion for voluntary

1

1  dismissal of this action without prejudice withdrawn and will proceed to consider the motions

2  still pending in this matter.

3            Pending before the court are: 1) plaintiff's September 14, 2005, motion for

4  permanent injunction, to which defendants filed objection/opposition on September 16, 2005,

5  after which plaintiff filed a reply on September 26, 2005; 2) Defendants' October 20, 2005,

6  motion for summary judgment, to which plaintiff filed an opposition, on November 17, 2005, to

7  which defendants filed a reply on November 28, 2005; and 3) plaintiff's motion for summary

8  judgment, filed on October 24, 2005, to which defendants filed an opposition on November 10,

9  2005, after which plaintiff filed a reply on November 28, 2005.  As plaintiff seeks, by way of his

10  motion for permanent injunction, the same relief he requests by way of his complaint, the court

11  will first adjudicate the dispositive motion to determine whether or not plaintiff is entitled to

12  such relief.

13  Plaintiff's Underlying Allegations

14            The court herein sets forth its earlier summary of plaintiff's claims:

15       Plaintiff is proceeding on a complaint, transferred to this court
         from U. S. District Court of Arizona by order filed on September
16       23, 2003, and filed in this court on October 7, 2003.  The
         complaint has been modified by order filed on January 20, 2004,
17       adopting the November 20, 2003, findings and recommendations
         of the undersigned.[1]  This action proceeds against defendants Bill
18       Lockyer, Attorney General of California at the state Department of
         Justice (DOJ), and Robert Santos, Assistant Manager of the
19       California Bureau of Criminal Identification and Information
         (BCII).  Within his complaint, plaintiff alleges violations of his
20       constitutional rights under the First, Fifth, Sixth and Fourteenth
         Amendments.  Complaint, p. 4.  Plaintiff alleges he has been
21       denied a fair trial and due process as a result of "erroneous
         government documents."  Id.

22       Plaintiff claims that it is the custom and practice of the DOJ to
23       report to public and law enforcement agencies erroneous
         information, knowing that the criminal records' information is not
24       accurate.  Id. [] Defendant Lockyer was made personally aware by

25  ─────────────────────

26       [1] Defendant California Department of Justice was dismissed with prejudice as a
     defendant.

plaintiff that BCII was reporting felony convictions against
plaintiff in cases that had been dismissed.... such as "arrests dated
1966, 1967, 1969, 1973, 1968," which also includes arrests
wherein plaintiff is actually innocent.  Plaintiff's next reference to
the years 1977, 1985, and 1988 is unclear.  Id.  Notwithstanding
plaintiff's having informed defendant Lockyer of the inaccuracies,
defendant failed to purge them from plaintiff's criminal history.
Id.

Defendant Santos was also made aware of the erroneous records
but refused to correct them.  Id.  Plaintiff references exhibits
attached to his complaint, which include print-out copies of at least
a part of plaintiff's criminal history, with plaintiff's indications of
which convictions have apparently been dismissed but are not
noted as such.  Exhibit 1 to Complaint.  Plaintiff also includes a
brief portion of a reporter's transcript, which is apparently included
to show that plaintiff's sentence has been enhanced because of his
prior arrests and convictions.  Among the remaining exhibits is a
copy of letter dated October 14, 2001, signed by defendant Santos,
referencing plaintiff's earlier request for a new printout of his
California criminal history record because "no changes have been
made to your criminal history record regarding the dates of arrest
you have mentioned."  Id.  Defendant Santos goes on to say that
there has been no agency request or court order that would change
the record that has been received and that in any case, the purging
by a law enforcement agency or court would have no bearing on
the records maintained by BCII unless a direct request is made to
BCII by the relevant agency to remove the specific criminal history
information from the record.  Id.

Plaintiff seeks money damages and injunctive relief.

See, Order, filed on 9/08/2004, pp. 1-3.

Motions for Summary Judgment

### *Legal Standard for Summary Judgment*

Summary judgment is appropriate when it is demonstrated that the standard set

forth in Fed. R. Civ. P. 56(c) is met.  "The judgment sought shall be rendered forthwith if . . .

there is no genuine issue as to any material fact, and . . .  the moving party is entitled to judgment

as a matter of law."  Fed. R. Civ. P. 56(c).

Under summary judgment practice, the moving party

always bears the initial responsibility of informing the district court
of the basis for its motion, and identifying those portions of "the
pleadings, depositions, answers to interrogatories, and admissions

3

1    on file, together with the affidavits, if any," which it believes
     demonstrate the absence of a genuine issue of material fact.
2

3   Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct., 2548, 2553 (1986).  "[W]here the

4   nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

5   judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

6   to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

7   after adequate time for discovery and upon motion, against a party who fails to make a showing

8   sufficient to establish the existence of an element essential to that party's case, and on which that

9   party will bear the burden of proof at trial.  See id. at 322, 106 S. Ct. at 2552.  "[A] complete

10  failure of proof concerning an essential element of the nonmoving party's case necessarily

11  renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be

12  granted, "so long as whatever is before the district court demonstrates that the standard for entry

13  of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323, 106 S. Ct. at 2553.

14          If the moving party meets its initial responsibility, the burden then shifts to the

15  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

16  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

17  (1986).  In attempting to establish the existence of this factual dispute, the opposing party may

18  not rely upon the allegations or denials of its pleadings but is required to tender evidence of

19  specific facts in the form of affidavits, and/or admissible discovery material, in support of its

20  contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,

21  106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is

22  material, i.e., a fact that might affect the outcome of the suit under the governing law, see

23  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

24  Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

25  dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

26  nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

1    In the endeavor to establish the existence of a factual dispute, the opposing party

2 need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

3 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

4 versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

5 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

6 genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.

7 56(e) advisory committee's note on 1963 amendments).

8    In resolving the summary judgment motion, the court examines the pleadings,

9 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

10 any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

11 477 U.S. at 255, 106 S. Ct. at 2513.  All reasonable inferences that may be drawn from the facts

12 placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S.

13 at 587, 106 S. Ct. at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the

14 opposing party's obligation to produce a factual predicate from which the inference may be

15 drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

16 aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

17 party "must do more than simply show that there is some metaphysical doubt as to the material

18 facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

19 nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct.

20 1356 (citation omitted).

21    On December 19, 2003, the court advised plaintiff of the requirements for

22 opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v.

23 Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and

24 Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

25 \\\\\

26 \\\\\

*Defendants' Motion for Summary Judgment*

Among the several grounds defendants set forth as the basis for their motion for summary judgment this court will reach only one because this ground implicates a threshold issue, demonstrating that the merits of this action cannot be reached in its present posture. Defendants contend that even if plaintiff's request for an injunction to compel defendants to "correct/purge erroneous records" has a constitutional basis (a point which defendants expressly do not concede), plaintiff cannot demonstrate the requisite irreparable injury, and the court should, in its discretion, deny equitable relief, recognizing that plaintiff has an unexhausted adequate state law remedy.  Defendants' Motion for Summary Judgment (DMSJ), pp. 33-37.

The following facts, inter alia, are undisputed, that defendant Santos has been employed in the Bureau of Criminal Identification & Information (BCII) of the Division of Criminal Justice Information Services of the California Department of Justice (DOJ) since 1974, and has been, since 1997, the BCII Supervisor of the Record Review Unit (RRU), as well as an assistant manager of the Record Support Section of the Record Information & Services Program of the BCII.  Defendants' Statement of Undisputed Material Facts (DSUMF) # 2.  In addition, it is undisputed that defendant Santos is responsible for providing to the subject of state summary criminal history ("rap sheet") information, upon his request, a copy of the same, and to respond on behalf of BCII to any assertions by the subject that any of his rap sheet information is erroneous or inaccurate. DSUMF # 3.  It is also undisputed that plaintiff has written to defendant Santos, since at least 1990, asserting that various entries or portions on his BCII rap sheet are erroneous.  Plaintiff contends that he has sent letters/requests to BCII and defendants seeking correction to his records alleged inaccuracies for at least 12 years, but has been largely ignored. Mazurak Declaration, p. 2, in support of plaintiff's motion for summary judgment (PMSJ). Defendant Santos avers that he has researched the issues raised and responded with any necessary corrections made.  Santos Declaration, ¶ 13, in support of DSUMF # 49.  The following portion of defendants' undisputed fact # 50, and neither implicitly or explicitly disputed by plaintiff: to

1   defendant Santos' knowledge, plaintiff has never initiated administrative adjudication of any of

2   his disputes, as provided for in Cal. Penal Code § 11126(c)[2] and Cal. Govt. Code

3   § 11503,[3] by filing an accusation with the California Office of Administrative Hearings.  Santos

4   Declaration, ¶ 13.

5           Plaintiff argues that defendants have knowingly refused for decades to make the

6   corrections to his criminal history record, citing Cal. Penal Code §§ 11126[4] and 11105(h),[5] as

---

[2]  This subsection sets forth the steps involved in the process of administrative adjudication which applies if the department or agency denies allegations of inaccuracy after a correction to the BCII state summary of criminal history has been sought by written request but the department denies allegations of inaccuracy.  By referring to Cal. Govt. Code § 11500 et seq., and by declaring that the agency is a "respondent," the Government Code tasks plaintiff/petitioner with filing an "accusation," or "statement of issues."  Cal. Govt. Code § § 11504, 11505.

[3]  This statute describes how, inter alia, "[a] hearing to determine whether a right, authority, license or privilege should be revoked...."

[4]  As referenced in footnote 2, this code section provides the procedure for an applicant to correct inaccuracies in a criminal record, stating, inter alia, that once a request has been received, "the department shall review the record to determine if the information correctly reflects the source document, and if it does not, the department shall make the necessary corrections and shall provide the applicant with a corrected copy of the record.  If the accuracy of the source document is questioned, the department shall forward it to the person or agency which furnished the questioned information.  This person or agency shall, within 30 days of receipt of the written request for clarification, review its information and forward to the department the results of the review."  Cal. Penal Code § 11126 (a), in part.  Cal. Penal Code § 11126(b) sets forth, as follows: "If the agency concurs in the allegations of inaccuracy or incompleteness in the record, *and finds that the error is material*, it shall correct its record and shall so inform the applicant of its correction of the record under this subdivision within 30 days.  The department and the agency shall notify all persons and agencies to which they have disseminated the incorrect record in the past 90 days of the correction of the record and the applicant shall be informed that the notification has been given.  The department and the agency shall also notify those persons or agencies to which the incorrect record has been disseminated which have been specifically requested by the applicant to receive the notification of the correction of the record and the applicant shall be informed that the notification has been given." [Emphasis added].  As noted earlier, § 11126(c) describes the administrative adjudication process for allegations of inaccuracy/incompleteness when the department of agency denies the allegations.

[5]  Cal. Penal Code § 11105 is the code section which addresses "state summary criminal history information; persons or entities to which information may be furnished; furnishing federal level criminal history information; fingerprint information."  Section 11105(a)(1) mandates that the  state Department of Justice is to "maintain state summary criminal history information."  Such information "means the master record of information compiled by the Attorney General pertaining to the identification and criminal history of any person, such as name, date of birth,

7

1  requiring authentic source documents for entries in the criminal history record.  PMSJ, p. 9.

2          The threshold question implicated in this case is whether plaintiff's allegations of

3  erroneous entries in his criminal history implicate a federal constitutional right.  Citing, inter alia,

4  Pennhurst State School & Hospital, 465 U.S. 89, 106, 104 S. Ct. 900, 911 (1984), for the well-

5  established principle that federal courts lack subject matter jurisdiction to order state entities and

6  officials to conform their conduct in accordance with state law, defendants contend that

7  expungement or correction of erroneous information in state records is not a right that reaches a

8  federal constitutional dimension.  DMSJ, p. 34.  Defendants cite Eutzy v. Tesar, 880 F.2d 1010,

9  1011 (8th Cir. 1989), a case which quotes, without analysis, a Sixth Circuit case, Duke v. White,

10 616 F.2d 955 (1980), also relied on by defendants, setting forth the following conclusory

11 statement, equally without analysis: "'[t]he right to expungement of state records is not a federal

12 constitutional right.'" In another case relied on by defendants, Fendler v. United States Parole

13 Commission, 774 F.2d 975, 979 (9th Cir. 1985), the Ninth Circuit states plainly that "[f]ederal

14 courts have the equitable power 'to order the expungement of Government records where

15 necessary to vindicate rights secured by the Constitution or by statute.'" Fendler, supra, quoting

16 Chastain v. Kelley, 510 F.2d 1232, 1235 (D.C. Cir. 1975) [emphasis in Fendler].  Defendants

17 also cite U.S. v. Campbell, 724 F.2d 812, (9th Cir. 1984), a case which does not appear apposite

18 as it speaks to expungement of all official records but the "nonpublic record" retained by the

19 federal Department of Justice, pursuant to a now-repealed statute which related to issuance of

20 certificates setting aside youthful offender convictions.

21         In Menard v. Saxbe, 498 F.2d 1017, 1023 (D.C. Cir. 1974), quoting Sullivan v.

22 Murphy, 478 F.2d 938, cert. denied, 414 U.S. 880, 94 S. Ct. 162 (1973), the D.C. Circuit stated:

23
24 physical description, fingerprints, photographs, date of arrests, arresting agencies and booking
   numbers, charges, dispositions, and similar data about the person."  Cal. Penal Code §
25 11105(a)(2)(A).  Section 11105(h), cited by plaintiff, states "It is not a violation of this section to
   include information obtained from a record in (1) a transcript or record of a judicial or
   administrative proceeding or (2) any other public record if the inclusion of the information in the
26 public record is authorized by a court, statute, or decisional law."

"The principle is well established that a court may order the expungement of records, including arrest records, when that remedy is necessary and appropriate in order to serve basic legal rights." This court, like other courts [footnote deleted], held that unlawful maintenance of records of arrest results in "injuries and dangers" that are "plain enough"....

The Ninth Circuit has found that Washington law provides a liberty interest in accurate prison record information in the proper case, but a plaintiff must file a formal, written inspection request and record challenge with the appropriate state criminal justice agency and satisfy the procedural prerequisites under Wash. Admin. Code §§ 446-2-80, 090 and 120 (1983). Hernandez v. Johnston, 833 F.2d 1316, 1318-1319 (9th Cir. 1987) (allegedly false statements in prison record did not deprive prisoner of due process, where prisoner is not implicating his criminal history record information). Having found that Washington state law provided such a liberty interest, the Ninth Circuit did not "reach the question of whether in the absence of the statute, such a right is 'grounded in the due process clause' itself." Id., citing Paine v. Baker, 595 F.2d 197, 199 (4th Cir. 1979).[6][7]

In Paine v. Baker, supra, 595 F.2d at 201, the Fourth Circuit held that "in certain limited circumstances a claim of constitutional magnitude is raised where a prisoner alleges (1)

---

[6] Hernandez also relied on Hewitt v. Helms, 459 U.S. 460, 466, 103 S. Ct. 864 (1983), but the Supreme Court has since curtailed the focus therein on mandatory language for determining whether a liberty interest has been created by a statute. State regulations give rise to a liberty interest protected by the Due Process Clause of the federal constitution only if those regulations pertain to "freedom from restraint" that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300 (1995)

[7] In other cases, the Ninth Circuit has been equally reticent in unqualifiedly holding that one has a constitutional right derived from the Due Process Clause in having incorrect records expunged or corrected. Generally, the Ninth Circuit will find that "other courts have found" some type of statutory or "fundamental right" or "it's part of the same criminal case" basis to have records corrected in extraordinary situations, but the Ninth Circuit will refrain from saying "we find" a constitutional right exists. See United States v. G,774 F.2d 1392, 1394 (9th Cir. 1985); United States v. Sweeney, 914 F.2d 1265, 1264 (9th Cir. 1990). See also United States v. Sumner, 226 F.3d 1005, 1012 (9th Cir. 2000) (generally asserting that jurisdiction may exist to expunge records.)

1    that information is in his file, (2) that information is false, and (3) that it is relied on to a

2    constitutionally significant degree."   That court found it to be a "jurisdictional predicate" to the

3    filing of an action under 42 U.S.C. § 1983 for the purpose of vindicating the newly recognized

4    "right secured to state prison inmates by the Constitution, to have prejudicial erroneous

5    information expunged from their prison files...." that the inmate must have first applied for

6    expungement to prison authorities.  Id., at 202.  Although in Paine, the court goes on to describe

7    a procedure whereby the inmate must notify prison officials in writing of the facts as he believes

8    them to be regarding information in his prison file that he believes to be false, it is not enough

9    that plaintiff in challenging information in his criminal history, under Hernandez v. Johnston,

10   833 F.2d 1316, 1318-1319, has corresponded with state officials seeking to rectify the record and

11   alleges that he has thereafter been refused or ignored.

12           Before plaintiff can assert a federal due process violation, plaintiff must have

13   followed the state procedures for correction of the record, the procedures as referenced above by

14   the defendants.  Plaintiff has fairly explicitly recognized this deficiency when he sought to

15   voluntarily dismiss the instant case without prejudice, referring to his need first to "adjudicate"

16   the allegations herein, inter alia, in the Office of Administrative Hearings.  See plaintiff's

17   5/22/06, "Motion to Dismiss without Prejudice."   Until he has done so, the matter cannot be said

18   to be ripe for adjudication in federal court.  In any event, as defendants state, plaintiff makes no

19   showing that he has even initiated administrative adjudication of any of his disputes, per

20   Cal. Penal Code § 11126(c) and Cal. Govt. Code § 11503, by filing an accusation with the

21   California Office of Administrative Hearings.  The court will recommend that defendants be

22   granted summary judgment on this ground and, therefore, will vacate plaintiff's (cross-)motion

23   for summary judgment as moot.

24   Motion for Permanent Injunction

25           Plaintiff seeks, by way of a motion for permanent injunction, the same relief

26   which he seeks in the instant action.  In both this motion and his motion for summary judgment,

1   plaintiff complains that he is under the "draconian" restrictions of Arizona prison regulations

2   with regard to access to legal materials, which preclude legal assistance from a department

3   paralegal because his action is beyond the initial filings; also, he is indigent and unable to pay for

4   any form of legal assistance.  He claims to be denied access to case law reporters, including U.S.

5   Supreme Court cases, and to be unable to obtain assistance from any other prisoner per the

6   regulations, thus hindering his ability to develop legal arguments (apparently, with respect to his

7   motion for summary judgment or to his opposition to defendants' dispositive motion).

8          The seminal case with respect to the constitutional right of access to the courts,

9   Lewis v. Casey, 518 U.S. 343, 116 S. Ct. 2174 (1994), arose in the very state, Arizona, the prison

10   regulations of which plaintiff herein complains.  Lewis held that a violation of such access could

11   only be shown if plaintiff suffers an *actual* injury from lack of law library access.  The Lewis

12   Court found that "the Constitution does not require that prisoners (literate or illiterate) be able to

13   conduct generalized research, but only that they be able to present their grievances to the courts –

14   a more limited capability that can be produced by a much more limited degree of legal

15   assistance."  Id., at 359, 116 S. Ct. at 2184.  See also Cornett v. Donovan, 51 F.3d 894, 898 (9th

16   Cir. 1995) (right of access to a law library extends only to the pleading stages of a lawsuit).

17   Generally, the pleading stages of a lawsuit do not extend over a period of time such that

18   continuous and long term access to the law library is required.  Nor does plaintiff complain that

19   he has been unable file his lawsuit, setting forth his claims, as he plainly has been able to do so.

20   In addition, plaintiff does not address the fact that his access to the law library in Arizona would

21   not provide him with access to California statutes or case law.

22          That Arizona prison regulations with regard to law library access for prisoners

23   may adhere to a strict, even narrow, compliance with Lewis does not render those regulations

24   unconstitutional.  Moreover, as noted, plaintiff's motion for permanent injunction seeks the same

25   relief which he seeks in the instant action, relief to which this court has found that he is not

26   \\\\\

entitled at this point.  The court will recommend denial of plaintiff's motion for permanent injunctive relief.

        Accordingly, IT IS ORDERED that:

        1.  Plaintiff's May 22, 2006, motion for voluntary dismissal of this action be deemed withdrawn by his June 20, 2006, reply to defendants' June 9, 2006, opposition; and

        2.  Plaintiff's October 24, 2005, motion (or cross-motion) for summary judgment is vacated as moot.

        IT IS RECOMMENDED that:

        1.  Plaintiff's September 14, 2005, motion for permanent injunction be denied; and

        2.  Defendants' October 20, 2005, motion for summary judgment be granted, and judgment be entered for defendants.[8]

        These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 8/7/06                /s/ Gregory G. Hollows

                           GREGORY G. HOLLOWS
                           UNITED STATES MAGISTRATE JUDGE

GGH:009 - mazu2114.msj

---

     [8]  Judgment in this case is without prejudice to its renewal after exhaustion of state court procedures.  Since ripeness is involved in the granting of summary judgment, and since ripeness implicates subject matter jurisdiction, United States v. Weber, 451 F.3d 552, 556 (9th Cir. 2006), the court has not reached the merits of the dispute.